Peck, J.
It appears from the petitions filed in these cases, that all of the relators who ask for the allowance of the writ of habeas corpus are now in the custody of the United States marshal for the northern district of the State of Ohio; that they are thus in his custody, under and by virtue of a mittimus regularly issued by the district court of the United States for the northern district of Ohio, on indictments preferred against them in said district court, for an alleged violation of the law of the congress of the United States, respecting fugitives from service, passed September 18,1850. That the relators are charged in said indictments with the rescue and the aiding and abetting the rescue of a fugitive from service; and that the proceedings under said indictments are still pending and undetermined before said district court.
The separate application of Simeon Bushnell, indeed, shows that he has been tried upon said indictment, and found guilty, and is now in custody, awaiting the final judgment and sentence of the court. That on being arraigned upon said indictment, before said district court, he, by his counsel, moved the court to quash the same for various reasons, one of which was, that the law of 1850, upon which it was based, is unconstitutional and void; which motion the district court refused to grant.
A motion to quash addresses itself to the sound discretion of the court, and is never granted except in very clear cases; but the defendant is left to raise the question in a more formal way, by demurrer or motion in arrest of judgment. The refusal to grant cannot be regarded as a final decision of the question raised by the motion, when the point is one which, if well taken, would be available on demurrer or in arrest of judgment. Indeed, such motion should never be granted if the question is in any degree doubtful; but should be reserved for hearing on motion to *601 arrest the judgment. No judgment or sentence having been pronounced, and the question of jurisdiction being still an open one before that court, we do not think the case of Simeon Bushnell, as to the question of jurisdiction, distinguishable in principle from that of the other relators.
Is it, then, legally competent for this court to withdraw the relators from the district court, in the custody of which they now are, charged with the violation of an act of congress, while the proceedings against them are still pending and undetermined, and discharge them on the ground that the act of congress, upon which the indictments are based, is unconstitutional and void ?
The district court now has possession of the case, and the parties to it, and has the legal power and capacity to hear and determine for itself, the question of its own jurisdiction and right to act in the premises. The legal presumption in such cases always is, that a court thus assuming to act, will determine the question of its own jurisdiction correctly, until it has acted finally upon it.
Hence it is a rule founded upon the comity which does, and, for the prevention of unpleasant collision, should always subsist between judicial tribunals, that where a court of general jurisdiction, and legally competent to determine its own jurisdiction, has acquired prior jurisdiction, de facto, over person or subject matter, no other court will interfere with, or seek to arrest its action, while the case is still pending and undetermined. This rule is sustained and supported by all the analogies of the law. See Smith v. Iver, 9 Wheat. Rep. 532; Hagan v. Lucas, 10 Pet. Rep. 400; Taylor v. Carryl, 20 How. Rep. 594; United States v. Morris, 2 Am. L. R. 351; Ex parte Robinson, 6 McLean 363; Keating v. Spink, 3 Ohio St. Rep. 105; Hurd on Habeas Corpus 199, et seq.
It is right in principle and preventive of unpleasant collision between different tribunals. If another tribunal were thus to interfere with our action, and withdraw from our custody a prisoner upon trial before us, and set him *602 at large, we should resist such attempt to the uttermost. And shall we not extend to other tribunals the same comity and the same confidence that we claim for ourselves ?
In the recent cases in the State of Wisconsin, and which have attracted so much attention and remark, this point was expressly decided, and that, too, by the same court which determined the fugitive slave law to be unconstitutional. Ex parte Booth, 3 Wis. Rep. 145.
The history of that case is as follows:
Booth had been arrested on warrants granted by a United States commissioner, for aiding in the escape of a fugitive slave from service, contrary to the law of 1850. One of the judges of the supreme court of Wisconsin, upon habeas corpus, discharged Booth from the custody of the marshal, on the ground that the law of 1850, as to fugitive slaves, was unconstitutional, among other things, in authorizing commissioners so to act and issue warrants, and that a warrant issued by such officer was illegal and void; and a majority of the supreme court of that state, on certiorari, affirmed the judgment.
Booth was subsequently indicted in the district court of the United States for the State of Wisconsin, for the same offense, and arrested by the marshal on a warrant issued thereon. Booth thereupon applied to the same supreme court, then in session, for a writ of habeas corpus, to be delivered from the custody of the marshal; but the writ was unanimously refused, on the ground that it appeared from the application, that he was under arrest upon indictment of a court having jurisdiction of alleged offenses against the United States, and that the case was still pending and undetermined. That court decided that they had no legal right to interfere in his behalf while the prosecution was pending, even though the law of congress, under which he was indicted, was unconstitutional and void; recognizing, in its fullest extent, the principle and practice of judicial comity to which I have adverted. They concede the privilege and right of the district court to deter *603 mine first and for itself, the question of its own jurisdiction ; and in reply to the claim that the law was unconstitutional and void, and that, therefore, the district court could not have any jurisdiction, very aptly remark, that that fact, if true, amounts, after all, to a question of jurisdiction, which they, in the first instance, must decide for themselves. Subsequently, the prosecution having terminated by a conviction and sentence of imprisonment, the same court allowed a writ of habeas corpus, and discharged Booth for alleged defects in the indictment, which did not bring the counts upon which he was convicted within the purview of the act of congress of September 18,1850.
We refer to these cases in Wisconsin with no design of expressing our assent or dissent to the decisions under the first and last writs of habeas corpus; but merely to show that a court which had judicially decided the law to be unconstitutional, still held that, in a case like that under consideration, they had no legal right or authority to interfere.
On the whole, we are unanimously' of the opinion that the relators, upon their own showing, admitting the law in question to be unconstitutional and void, could not be discharged by us, if the writ had been issued, and they were now before us for deliverance. It would be an idle and expensive ceremony to award the writ to bring the parties here, and, for the time, intercept proceedings in said district court, when our next duty would be to remand them into the custody of the officer who now holds them.
The application for writs of habeas corpus, in behalf of the relators, is, for the reasons stated, refused.
This view of the case renders an examination of the other propositions mooted in the argument, as to the constitutionality of the act of congress, adverted to, and the right of the state tribunals to interfere with the final action of the district courts in that behalf, altogether unnecessary.
Swan, C. J., and Brinkerhoff, Scott and Sutliff, JJ., concurred.